Hon. Barbara Blum Commissioner Department of Social Services
This is in response to a request by Bridget Eadon, Associate Attorney of the Department of Social Services, for an opinion as to whether a conflict of interest would exist if a Deputy Commissioner of that Department were to accept a position on the advisory board of the Foundation for Long Term Care Inc., a not-for-profit affiliate of the New York Association of Homes for the Aging.
According to the statement of facts presented to me by the aforenamed Associate Attorney, the Deputy Commissioner in the course of the performance of his duties:
 "directs the Division of Adult Residential Care which has comprehensive responsibility for approval and supervision of the establishment and operation of adult homes including not-for-profit homes for the aging."
It is further represented on behalf of the Department that:
 "the New York Association Of Homes For The Aging is a group of operators of not-for-profit homes for the aging. That organization functions as a membership information exchange, liaison with the national groups and other like associations and as a representative for association interests. The association is in the process of spinning off an affiliate not-for-profit group, Foundation For Long Term Care Inc. . . . The prime purposes of the group are to be education and research designed to improve long term care to the elderly."
I am informed that the Deputy Commissioner of Adult Residential Care has been asked to participate in the affairs of the Foundation For Long Term Care Inc., by serving on its Advisory Board.
The specific questions addressed to me are the following:
 (1) May the Deputy Commissioner accept the invitation to serve on the Advisory Board of the Foundation?
 (2) May he participate in the activities of the Advisory Board in a non-voting capacity?
 Guidelines for State officers and employees engaged in business or professional activities outside their State service are set forth in Public Officers Law, § 73. The situation, as described, does not appear to conflict with any provision of this section and, therefore, I find that there is no violation of such section. After arriving at this determination, it is necessary to consider whether the situation would offend the Code of Ethics for State officers and employees as set forth in Public Officers Law, § 74.
 An examination of section 74, more particularly subdivision 3, discloses the following language:
 "h. An officer or employee of a state agency . . . should endeavor to pursue a course of conduct which will not raise suspicion among the public that he is likely to be engaged in acts that are in violation of his trust."
In analyzing the effect of this subdivision on the proposed activities of the Deputy Commissioner, I express no doubt as to his sincerity in desiring to render assistance in a noble cause, without profiting personally. However, as has been often stated, a public official must not only be innocent of any wrongdoing, but he must be alert at all times so that his acts and conduct give the public no cause for suspicion. He must give no appearance of a potential conflict between his official duties and personal activities even though an actual conflict is not present.
The Division of Adult Residential Care has comprehensive responsibility for approval and supervision of the establishment and operation of all adult homes, be they not for profit or privately owned. The Deputy Commissioner, who is the subject of this opinion, directs the activities of the Division. No matter how well intentioned he may be, if any official act of his should be a subject of fair disagreement in the industry, some suspicion might be raised as to whether he was influenced by his relationship to the Foundation For Long Term Care Inc.
Therefore, I conclude that the Deputy Commissioner may not accept a position on the Advisory Board of the Foundation nor may he participate in its activities in a non-voting capacity, since to do so would create a conflict of interest and a violation of the Code of Ethics.